IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

DENNIS GREY LEWIS,

          Plaintiff,

      v.

KATHLEEN SEBELIUS, Secretary of
Health and Human Services,

          Defendant.

Case No. 1:12-cv-01841

REPORT & RECOMMENDATION

CLARKE, Magistrate Judge.

      Plaintiff Dennis Lewis ("Lewis"), pro se, seeks review of a final decision by the
Medicare Appeals Council (MAC) holding that Lewis did not experience a major life-changing
event that justified using a more recent tax year to calculate his income-related monthly
adjustment amounts ("IRMAAs") to his Medicare Part B and Part D premiums for 2011. Judicial
review is authorized by 42 U.S.C. § 1395ff(b)(1)(A) and § 405(g). For the reasons below, the
MAC's decision should be affirmed, and the defendant's motion for summary judgment (#31)
should be GRANTED.

## LEGAL STANDARD

The MAC's ruling is the final decision of the Secretary, Conahan v. Sebelius, 659 F.3d 1246, 1249 (9th Cir. 2011) (citing Heckler v. Ringer, 466 U.S. 602, 607 (1984)); thus on judicial review, the court must uphold the MAC's factual findings if they are supported by substantial evidence. 42 U.S.C. § 405(g); Mayes v. Massanari, 276 F.3d 453, 458–59 (9th Cir.2001).[1] Substantial evidence is "more than a mere scintilla," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401(1971) (citation and internal quotation marks omitted). The agency's interpretation of its own regulations receives "substantial deference" and "must be given controlling weight unless it is plainly erroneous or inconsistent with the regulation." Thomas Jefferson Univ. v. Shalala, 512 U.S. 504, 512 (1994) (citation and internal quotation marks omitted).

"A reviewing court may not substitute its own judgment for that of the agency." Memorial, Inc. v. Harris, 655 F.2d 905, 912 (9th Cir. 1980) (citing Citizens to Improve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.C. 814, 824 (1971)). Under the Administrative Procedure Act, the reviewing court must affirm the Agency's determination unless it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). A decision is arbitrary and capricious if the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." O'Keefe's, Inc. v. U.S. Consumer Prod. Safety Comm'n, 92 F.3d 940, 942

---

[1] The ALJ's decision is not entitled to deference unless it is the agency's final decision on review. Conahan, 659 F.3d at 1249 n.1.

(9th Cir. 1996) (quoting <u>Motor Vehicle Mfr.'s Ass'n v. State Farm Mut. Auto Ins. Co.</u>, 463 U.S. 29, 43 (1983)).

## REGULATORY FRAMEWORK

The Social Security Act requires beneficiaries whose modified adjusted gross income (MAGI) exceeds a threshold amount to pay an adjusted premium, or IRMAA, for Medicare Part B and Part D. In ordinary circumstances, regulations require that the SSA use the MAGI provided by IRS for the tax year two years prior to the effective year of the IRMAA determination. 20 C.F.R. § 418.1135(a). The SSA will use tax information from a more recent tax year if the beneficiary has experienced four conditions listed in 20 C.F.R. § 418.1201, the first of which is that the beneficiary experienced a "major life-changing event." 20 C.F.R. § 418.1201(a). A "major –life-changing event" is narrowly defined to include:

> (a) Your spouse dies;
> (b) You marry;
> (c) Your marriage ends through divorce or annulment;
> (d) You or your spouse stop working or reduce the hours of your work;
> (e) You or your spouse experiences a loss of income-producing property, provided the loss is not as the direction of you or your spouse (e.g., due to the sale or transfer of the property) and is not a result of the ordinary risk of investment. Examples of the type of property loss include, but are not limited to: Loss of real property within a Presidentially or Gubernatorially-declared disaster area, destruction of livestock or crops by natural disaster or disease, loss from real property due to arson, or loss of investment property as a result of fraud or theft due to a criminal act by a third party;
> (f) You or your spouse experiences a scheduled cessation, termination, or reorganization of an employer's pension plan;
> (g) You or your spouse receives a settlement from an employer or former employer because of the employer's closure, bankruptcy, or reorganization.

20 C.F.R. § 418.1205. The regulations further specify that "[w]e will not consider events other than those described in § 418.1205 to be major life-changing events. Certain types of events are

not considered major life-changing events for the purposes of this subpart, such as: (a) Events

that affect your expenses, but not your income; or (b) Events that result in the loss of dividend

income because of the ordinary risk of investment." 20. C.F.R. § 418.1210.

      Guidance published by the SSA in its Programs Operation Manuals System (POMS)

states that a "significant loss of income due to the reduction or cessation of certain types of

pension income may cause a beneficiary to request a new initial determination and may qualify

as a life-changing event." In order to qualify as an LCE based on a reduction or cessation of

pension income, the pension must be:

1. A traditional defined benefit pension plan or a Cash Balance plan, and
2. The loss of income is the result of:
    a. A plan failure or termination (e.g. through a bankruptcy restructuring), or
    b. A scheduled cessation that the beneficiary made a decision about some time in
       the past. For example, the beneficiary chose to take a 20 year annuity rather
       than a lifetime pension when he retired in 1986.

POMS HI 01120.40.

## BACKGROUND

      Lewis is a Social Security beneficiary who participates in the Medicare Part B medical

insurance and Part D prescription drug coverage. A.R.[2] 121, 122, 152. In 2009, Lewis reported

in his tax return that he was single and had an adjusted gross income of $193,790. A.R. 77, 129.

Because Lewis had no tax-exempt interest income, his modified adjusted gross income was the

same as his adjusted gross income. A.R. 122.

      On November 26, 2010, the Social Security Administration (SSA), which is responsible

for calculating IRMAAs, determined that Lewis's 2011 Medicare Part B would include a

$184.50/month IRMAA increase and his Medicare Part D would include a $50.10 IRMAA

---

[2] The Certified Administrative Record was lodged with the Court, as indicated by ECF Doc #25. The index is
available at ECF Doc #26.

increase to his standard monthly premiums. A.R. 5, 121-127, 129-132. The SSA used the information from Lewis's 2009 tax return to calculate these premiums. A.R. 77, 122.

On Lewis's request for reconsideration, the SSA affirmed its November 26, 2010 decision in a written determination dated November 5, 2011. A.R 5, 121-127, 129-132. Lewis later requested a hearing before an ALJ. A.R. 97-98, 138. On May 15, 2012, the ALJ found that the SSA had improperly calculated Lewis' IRMAAs. A.R. 54-61. The ALJ determined that Lewis met the criteria of 20 C.F.R. § 418.1201 and had therefore experienced a qualifying life-changing event that justified calculating his part B and Part D IRMAAs based on a more recent tax year. A.R. 61.

On July 3, 2012, on its own motion, the MAC issued a proposed decision reversing the ALJ and finding that the SSA had correctly calculated Lewis' 2011 Part B and Part D IRMAAs. A.R. 4, 31. Mr. Lewis submitted a response objecting to the proposed decision. A.R. 11. However, on August 20, 2012, the MAC issued a notice of its final decision determining that Lewis's MAGI exceeded the threshold amount based on his 2009 tax return and concluding that Lewis was required to pay the increased IRMAAs for the year of 2011. A.R. 2.

## DISCUSSION

In this case, the facts are not in dispute. Lewis admits that he accelerated the withdrawal of funds from his pension plan in 2009, which increased his MAGI for that year to $193,790. It is undisputed that he accelerated these withdrawals in response to unanticipated events in his life involving his family, health crises, and other financial responsibilities. Lewis makes a coherent and well-reasoned argument that he experienced a "major life-changing event" under the Social Security Act and is therefore qualified to use more recent tax information to calculate his IRMAA. However, the Court's role in the administrative process is not to second-guess the

decision of the Secretary, nor may the Court reverse for possible reasonable alternatives. Instead, the Court must evaluate whether the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

The final decision of the MAC in this case took the entire record into consideration, including the arguments made by Mr. Lewis in response to the proposed decision dated July 3, 2012. Notably, the final decision took into account Lewis' claims that he accelerated his withdrawals due to situations beyond his control and that his pension plan was effectively terminated when it was depleted in 2010. The MAC also took into consideration Lewis' argument that the SSA POMS are not binding regulations with the force of law. The MAC supported using the POMS, however, by pointing out nearly identical language published in the Federal Register. See 71 Fed. Reg 10926, 10929 (proposed); 71 Fed. Reg. 62923, 62926.

Ultimately, the MAC concluded that "the regulations, as promulgated by SSA do not contemplate the depletion of a pension fund through voluntary accelerated withdrawals may qualify as a major life-changing event." In other words, termination of the pension plan must not have been at the beneficiary's direction; thus Lewis' situation does not qualify.

Mr. Lewis is understandably frustrated by the long and often arduous process of administrative review. However, Court must uphold the law, and it must affirm a finding supported by "such relevant evidence as a reasonable mind might accept as adequate . . . even if it is possible to draw two inconsistent conclusions from the evidence. Vallejo Gen. Hosp. v. Bowen, 851 F.2d 229, 233 (9th Cir. 1988).

## RECOMMENDATION

For the reasons stated above, the MAC's decision should be affirmed. Therefore, defendant's motion (#31) should be GRANTED, and judgment entered for the defendant.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. Objections to this Report and Recommendation, if any, are due no later than fourteen (14) days after the date this recommendation is filed. If objections are filed, any response is due within fourteen(14) days after the date the objections are filed. See FED. R. CIV. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED this _____ day of September, 2013.

MARK D. CLARKE
United States Magistrate Judge